IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARK-ANTHONY TYNES, | § § § | |
| *Plaintiff,* | § § | CIVIL NO. SA-18-CV-00242-FB |
| vs. | § § | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | § § § § | |
| *Defendant.* | § | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant's Motion for Summary Judgment [#12]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#3]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's Motion [#12] be **GRANTED**.

## I. Procedural Background

Plaintiff Mark-Anthony Tynes originally filed his *pro se* Complaint for Employment Discrimination in the 225th Judicial District Court for Bexar County, Texas, on November 15, 2017 [#1-4]. In his Complaint, Tynes alleges that Defendant Nationwide Mutual Insurance Company ("Nationwide") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), when it terminated his employment on this basis of his race and failed to promote him to the position of a life insurance agent. Nationwide removed Tynes's Complaint to federal court on March 13, 2018 [#1] on the basis of federal-question and diversity

1

jurisdiction. Nationwide moved to dismiss Tynes's failure-to-promote claim for failure to exhaust administrative remedies, and the undersigned issued a report and recommendation on May 9, 2018 recommending the motion be granted [#8]. The report and recommendation remains pending before the District Court.

Nationwide filed the motion for summary judgment that is the subject of this report and recommendation on October 12, 2018. By its motion, Nationwide moves for judgment on Tynes's remaining Title VII claim of race discrimination. Tynes's response to Nationwide's motion was originally due on or before October 29, 2018. Loc. R. W.D. Tex. 7(e)(2) (responses to dispositive motions due no later than 14 days after the filing of the motion); Fed. R. Civ. P. 6(d) (requiring addition of three days for service made by mail). However, Tynes filed a motion to compel discovery on October 22, 2018 [#13], seeking certain discovery from Nationwide. The Court denied the motion to compel on November 2, 2018, because the discovery sought was not timely requested during the discovery period [#17]. In that Order, the Court reminded Tynes of his obligation to respond to Nationwide's pending motion for summary judgment and provided a new deadline of November 16, 2018. To date, Tynes has not filed a response to the summary judgment motion. Pursuant to Local Rule CV-7(e)(2), if there is no response filed within the time period prescribed by the rules, the Court may grant the motion as unopposed.

The summary judgment record submitted by Nationwide in support of its motion for summary judgment is undisputed, as there is no response to Nationwide's motion. This record establishes the following facts: Tynes is an African-American male who was hired by Marcus Langford in July 2014 to work for Nationwide as a Personal Lines Regional Sales Agent in the Direct Distribution Department to sell home, flood, and motor vehicle insurance policies by telephone to residents of certain states from a Nationwide call center. (Langford Decl. [#12-3] at

¶ 2; Tynes Dep. [#12-4] at 33:5, 16–18, 52:7–13.) Langford remained Tynes's supervisor throughout his employment. (Langford Decl. [#12-3] at ¶ 2; Tynes Dep. [#12-4] at 53:7–10.) In January 2016, Langford promoted Tynes to the position of National Sales Agent, thereby expanding his sales territory and allowing him to sell policies in all states. (Langford Decl. [#12-3] at ¶ 2; Tynes Dep. [#12-4] at 54:2–5, 64:12–14, 65:12–20.) Langford also recommended Tynes for the Direct EXCEL Program in April 2016 and selected him to attend a training course on life insurance sales. (Langford Decl. [#12-3] at ¶¶ 2–3.)

Although Tynes's sales numbers were consistently high, his performance began to decline in 2015, and during the last year of Tynes's employment, Langford received several "escalated calls" from Nationwide's Customer Resolution & Response Department ("CRR") regarding agent errors made by Tynes.[1] (*Id.* at ¶¶ 4, 6.) Tynes's errors involved the use of improper customer discounts and incorrect policy information (including in one instance the falsification by Tynes of the mileage amount a customer said she drove each year) and the use of profanity during sales calls. (*Id.* at ¶ 6.) According to Nationwide's policy, an employee's failure to follow these standards may lead to disciplinary action, up to and including termination of employment. (Langford Decl. [#12-3] at ¶ 4; Nationwide Policy Guide [#12-1] at 18–19.)

As a result of these performance issues, Langford issued Tynes a documented performance coaching in early 2015. (Langford Decl. [#12-3] at ¶ 7; April 2015 Performance Coaching [#12-4].) In May of 2015, Langford then issued Tynes two written warnings, one for attendance and one for performance. (Langford Decl. [#12-3] at ¶ 8; May 2015 Written Warnings [#12-5, #12-6].) For a period, Tynes's performance improved, but issues resurfaced in 2016 related Tynes's failure to follow call flow and his failure to input correct information in

---

[1] When a customer makes a complaint, it is considered an "escalated call," and the complaint is addressed by CRR. (Langford Decl. [#12-3] at ¶ 6.)

writing policies. (Langford Decl. [#12-3] at ¶ 8.) In response to these deficiencies, Langford issued Tynes a Written Notice in March 2016, a Written Notice in August 2016, a Final Written Notice in September 2016, and another Written Notice in October 2016. (Langford Decl. [#12-3] at ¶ 8; March 2016 Written Notice [#12-7]; August 2016 Written Notice [#12-8]; September 2016 Final Written Notice [#12-9]; October 2016 Written Notice [#12-10].) Tynes also received an annual performance review rating of "2-Inconsistent" in his 2016 review. (Langford Decl. [#12-3] at ¶ 8; Performance Document [#12-11] at 5.) During this time period, Langford coached Tynes at least on a weekly basis in an attempt to help him improve his performance. (Langford Decl. [#12-3] at ¶ 9.)

In January 2017, Langford received an email from CRR reporting an escalated call that involved an error by Tynes, specifically, that he bound a policy with a paperless billing discount but failed to set up electronic billing on the account, an error that led to a premium increase for the customer of $46.10. (Langford Decl. [#12-3] at ¶ 10; E-mail Regarding Error [#12-12] at 3.) The CRR notification was sent to Tynes, Langford, Luis Romero (Langford's immediate supervisor), and Travis Hodges (Langford's top supervisor). (Langford Decl. [#12-3] at ¶ 11; Correspondence Regarding Error [#12-12] at 2.) In response, Langford set up a call with the Office of Associate Relations ("OAR") to discuss Tynes's performance. (Langford Decl. [#12-3] at ¶ 11.) Langford spoke with an OAR associate, Barbara Rexrode, on January 19, 2017 and informed her that he wanted to resolve the issue with informal coaching at the time and took no further action. (Langford Decl. [#12-3] at ¶ 11; Rexrode Decl. [#12-19] at ¶ 1.)

Then, in February 2017, Nationwide received four escalated calls regarding Tynes in one week, all of which involved Tynes improperly applying discounts on policies, discounts that the company later had to remove, which resulted in increased premiums for the customers.

4

(Langford Decl. [#12-3] at ¶ 13; Complaint [#12-13]; Complaint [#12-14]; Complaint [#12-15]; Complaint [#12-16].) At this point, Langford decided to terminate Tynes from employment for unsatisfactory performance. (Langford Decl. [#12-3] at ¶ 14.) Langford discussed the matter with Romero and contacted OAR to begin the termination process. (*Id.* at ¶ 14.) Tynes was terminated on March 7, 2017, after Romero and Langford met with Tynes in person (with Rexrode attending the meeting by phone). (Langford Decl. [#12-3] at ¶ 14; Termination Letter [#12-17]; Rexrode Decl. [#12-19] at ¶ 2.) Tynes timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 9, 2017 alleging race discrimination. (EEOC Charge [#12-20] at 4.) The EEOC issued its Notice of Right to Sue on September 18, 2017 (*id.* at 3), and Tynes filed the instant lawsuit.

## II. Legal Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

5

*Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the non-movant's response (or lack thereof). *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III. Analysis

Tynes's race discrimination claim under Title VII fails as a matter of law. Tynes is unable to establish a *prima facie* case of discrimination. Furthermore, even if Tynes could do so, Nationwide has proffered a legitimate, nondiscriminatory reason for Tynes's termination—Tynes's performance issues—and, by his lack of response, Tynes has failed to satisfy his burden to rebut Nationwide's stated reason as pretext for discrimination.

Title VII makes it unlawful for an employer to discharge an employee because of his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). A plaintiff can prove intentional discrimination through either direct or circumstantial evidence. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 235 (5th Cir. 2016). When a plaintiff offers only

circumstantial evidence, as here, the *McDonnell Douglas* framework requires the plaintiff to establish a *prima facie* case of discrimination, which, if established, raises a presumption of discrimination. *See Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 179–80 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). To establish a *prima facie* case of discrimination, the plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) others similarly situated were more favorably treated or that the plaintiff was replaced by a non-minority. *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006).

A plaintiff's *prima facie* case creates an inference of discrimination that shifts the burden of production to the defendant to come forward with evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Rutherford*, 197 F.3d at 180. This burden is one of production, not persuasion, and can involve no assessment of credibility. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Once the employer articulates a legitimate nondiscriminatory reason and produces competent summary judgment evidence in support of that stated reason, the inference of discrimination disappears, and the burden of proof shifts back to the plaintiff to demonstrate the employer's articulated reason for the adverse employment action was merely a pretext for discrimination. *Rutherford*, 197 F.3d at 180.

Nationwide contends that Tynes cannot satisfy his *prima facie* burden because he cannot demonstrate that he was treated less favorably than other similarly situated employees or that he was replaced by a non-minority. The undersigned agrees. To satisfy the fourth element of his *prima facie* case, Tynes must show that Nationwide gave preferential treatment to another employee outside the protected class under nearly identical circumstances. *Lee v. Kansas City S.*

*Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). In other words, the employees being compared must have "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* Tynes has failed to meet this burden.

Tynes has failed to establish a *prima facie* case because his purported comparators are not outside his protected class and even if they were, he has not demonstrated that they were similar situated yet treated more favorably. The first possible comparator Tynes identified in his deposition, Irving Bellamy, is another African American sales employee supervised by Langford who at the time of the deposition was still employed by Nationwide. (Tynes Dep. [#12-18] at 153:4–8; Rexrode Decl. [#12-19] at ¶ 3.) As Tynes and Bellamy are the same race, he cannot support Tynes's *prima facie* case of race discrimination. In any event, even if Bellamy were a different race, Tynes conceded in his deposition that he did not know how many written warnings for performance issues, if any, Bellamy had. (Tynes Dep. [#12-18] at 92:6–21.) Langford clarified in his declaration, which remains uncontested, that Bellamy never received any disciplinary interventions while under supervision of Langford. (Langford Decl. [#12-3] at ¶ 18.) Thus, he is not similarly situated any cannot serve as a comparator, even if he were more favorably treated.

The only other potential comparator identified by name in the summary judgment record is Jeremy Edwards, a sales employee of mixed race who identifies as black. (Rexrode Decl. [#12-19] at ¶ 3.) Even assuming that he is outside of Tynes's protected class, Edwards cannot be the basis of Tynses's *prima facie* case either. Langford stated in his declaration that Edwards neither had the extensive performance issues that Tynes did nor received four escalated calls in

one week. (Langford Decl. [#12-3] at ¶ 18.) Due to the disparity in performance issues, Edwards (like Bellamy) is not similarly situated to Tynes either.

The record contains no evidence of any other possible comparator. At the time of Tynes's termination, Langford stated that he supervised a team of 12 to 13 associates, none of whom had ever received four escalated calls in one month, much less in one week, and none had ever received complaints for the use of profanity on a customer call. (*Id.* at ¶ 15.) Finally, because it is undisputed that Nationwide did not hire a specific person to replace Tynes, Tynes cannot demonstrate he was replaced by a member outside of his protected class. (*Id.* at ¶ 16.)

Even if Tynes had identified a comparator and satisfied his *prima facie* burden, Nationwide would still be entitled to summary judgment because it has established a nondiscriminatory reason for the termination of Tynes—his documented pattern of performance issues. (*See* April 2015 Performance Coaching [#12-4]; May 2015 Written Warnings [#12-5, #12-6]; March 2016 Written Notice [#12-7]; August 2016 Written Notice [#12-8]; September 2016 Final Written Notice [#12-9]; October 2016 Written Notice [#12-10]; Performance Document [#12-11] at 5; E-mail Regarding Error [#12-12] at 3.) By failing to respond to Nationwide's motion for summary judgment, Tynes has failed to establish that the proffered reason for his termination was pretext for race discrimination. *See Rutherford*, 197 F.3d at 180.

Moreover, the summary judgment record provides further support for Nationwide's position that Tynes's race had nothing to do with his termination. Tynes never raised any concerns to Langford during his employment regarding possible discrimination, and Tynes stated in his deposition that he is not alleging that Langford personally discriminated against him in any way. (Tynes Dep. [#12-18] at 53:1–10, 56:12–19; Langford Decl. [#12-3] at ¶ 14.) Rather, Tynes claimed in his deposition that he believed Hodges was the discriminatory actor. (Tynes

9

Dep. [#12-18] at 157:2–25.) And yet the summary judgment record contains uncontested statements by Langford that Hodges was not involved whatsoever in Tynes's discipline or termination and that Langford, in conjunction with Rexrode, made these disciplinary and termination decisions. (Langford Decl. [#12-3] at ¶ 14.)

## IV.  Conclusion and Recommendation

In summary, having considered Nationwide's motion, the summary judgment record in this case, and the lack of response from Tynes, the undersigned recommends that Defendant's Motion for Summary Judgment [#12] be **GRANTED**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations

contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 5th day of December, 2018.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE